UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALDO DELGADO; DAMIAN MENDEZ,

    Plaintiffs,

v.                                      CASE NO.: 2:17-cv-411-FtM-99MRM

GATOR MULCH OF S.W. FLORIDA,
INC, a Florida Profit Corporation,
as successor in interest to FLORIDA
SPREADING SERVICES, LLC;
and MANUEL GAMEZ-NINO,
Individually,

    Defendants.
_____/

## ALDO DELGADO'S ANSWERS TO COURT'S INTERROGATORIES

1.     During what period of time were you employed by the Defendant?

**ANSWER:**    **December 2014 through the December 2016**

2.     Who was your immediate supervisor?

**ANSWER: Manuel (Manny) Gamez-Nino. Mr. Gamez-Nino's wife, Heidi Sariol, was also present at the business on a daily basis, did payroll and signed paychecks, and assisted in the day to day running of the business. The decision to terminate my employment was made by Heidi Sariol.**

3.     Did you have a regularly scheduled work period? If so, specify

**ANSWER:   I was first hired as a driver, and worked in that position through the end of April 2016. In that position, only 7:00 a.m. to 5:30 p.m., with 30 minutes for lunch, Monday through Saturday, was counted as my work time. However, my job was to pick up**

the crew and also to drop them off, so my job started much earlier when I picked them up, which began long before 7:00 a.m. I also dropped the crew off long after 5:30 p.m., and then had additional laundering work I was required to do after that as well as other tasks described below.

When I was made an "operations manager," my schedule was supposed to be 7:00 a.m.to 3:30 p.m., Monday through Saturday, but I worked outside of these hours as well, because often we had to stay at the jobsite after 3:30, and/or I was required to drive pallets back to the yard and unload them at the end of the day, which added hours of drive time and unloading time onto the end of my day.

4. What was your title or position? Briefly describe your job duties.

**ANSWER:** Title/Position: Driver (December 2014 through end of April 2016)

Job duties: my job was to pick up and drop off the crew and work during the day with the crew stacking pallets and checking work, drive mulch on the trailer, and then to do the laundering of the uniforms, truck washing and taking the trucks in for maintenance, dumping trash and pallets, picking up and dropping off employee paychecks.

Title/Position: Operations Manager (May 2016-December 2016)

Job duties: I checked the crew's work, talked to customers about what they wanted done to communicate it to Manny, was onsite full-time relaying to Manny any issues that came up for his instruction as to what to do, collected timesheets, collected daily worksheets, received mulch trucks, transported trash trailers, truck maintenance.

5. What was your regular rate of pay?

**ANSWER:** **As a driver $15/hr (I as originally told it would be $150 for ten hours each day, but if I stopped before noon, I was only paid for half of a day, so my rate was really more of an hourly rate). As an operations manager, $650 per week.**

6. What is the nature of your claim (check all that apply)?

  **X**  Off the clock work (Defendant failed to record, or prohibited you from recording, all of your working time);

  **X**  Misclassification (Defendant mistakenly classified you as exempt from overtime);

  ___ Miscalculation (Defendant failed to correctly calculate your compensation);

  **X**  Other (Please describe): **In addition to misclassifying me as exempt, I was paid as an independent contractor, even though I was a full time employee. So I was also misclassified as an independent contractor.**

7. Provide an accounting of your claim, including:

  (a) Dates:

  **ANSWER:** Driver – December 2014 to end of April 2016

   Operations Manager – May 2016 to December 2016

  (a) Regular hours worked:

  **ANSWER:** I always worked forty regular hours in each week

  (b) Over-time hours worked;

  **ANSWER: As a driver, my start time would vary depending on where the job was, because if we had to drive far to the jobsite, I might have to pick up the guys as early as 3:30 a.m. On average, I estimate based on my reasonable recollection that I worked about 106 hours per week, or 66 overtime hours each week. This takes into account conservative estimates of 10 hours of work at the jobsite, 3 hours from picking up the guys to the jobsite (it was often much longer), 3 hours driving the guys back after the job (it was often much longer), and about 1.5 hours of laundry each night, and about an hour each week for washing the van. It does not take into account all of the work I did getting and dropping off paychecks, truck**

3

maintenance, but I am leaving that time to the side for now in order to make a conservative estimate.

As an Operations Manager, my reasonable recollection is that I worked 63 hours per week on average. This takes into account 8 hours of daily work at the jobsite, and an additional 2.5 hours per day of either driving pallets back to the yard to unload or staying later than 3:30 at the jobsite. Sometimes I would stay at the jobsite as late as 7, so 2.5 hours is an average estimate. I also did other tasks during this time which I am leaving off for now, in order to be conservative in my estimate.

(c)    Pay received versus pay claimed;

ANSWER: As a driver, I was usually paid $150 per full day, only taking into account the 10 hours of work at the actual jobsite. So that means that for the first 20 hours of overtime, I am only owed $7.50 per hour. However, I have not been paid at all for the remaining 40 hours each week, and so am owed $22.50 per hour for each of those hours, for a total of $1,185.00 per week.

As an Operations Manager, I was paid $650 per week. So my regular rate was $10.32, and I am owed $5.16 per hour for 23 overtime hours per week, for a total of $118.68 per week.

(d)    Total amount claimed.

ANSWER:    $1,185 weekly for 4.33 weeks/month over 16.5 months = $84,662.33.
$118.68 weekly for 4.33 weeks/month over 8 months = $4,111.08

Total Owed = $88,773.41
Plus an equal amount in liquidated damages for a total of $177,546.82.

If a court were to find that a "halftime" calculation should apply to all hours, my damages based on the above numbers would be $24,129.25, plus equal liquidated damages, for a total of $48,258.50. These calculations were prepared with my attorneys' assistance, based on the recollection of hours I provided, because I do not know the legal ins-and-outs of how the law calculates the amount of overtime owed. I also claim entitlement to reasonable attorney's fees and costs.

8.    If you have brought this case as a collective action:

    (a)    Describe the class of employee you seek to include in this action.

4

(b) Has an opt-in notice been filed for every potential opt-in Plaintiff who has identified himself or herself as a person who wishes to join this action?

**ANSWER: N/A**

9. Please specify all attorney's fees and costs incurred to date. With respect to attorney's fees, please provide the hourly rate(s) sought and the number of hours expended by each person who has billed time to this case.

**ANSWER: My attorney, Angeli Murthy, has spent 7.5 hours on my case, at a rate of $425.00 per hour, for a total of $3,187.5.00. Paralegal Jackie Kerr has spent 2.5 hours on this case at a rate of $105.00, for a total of $262.50.**

10. When did you (or your attorney) first complain to your employer about alleged violations of the FLSA?

**ANSWER: I complained throughout my employment that I was not being paid enough or correctly. My attorney sent a letter to Manny in May 2017, alleging that I had been misclassified as exempt, as well as other issues entitling me to overtime compensation.**

11. Was this complaint written or oral? (If a written complaint, please attach a copy).

**ANSWER: The letter from my attorney was written (EXHIBIT A). Other complaints were oral.**

12. What was your employer's response? (If a written response, please attach a copy).

**ANSWER: When I complained orally, Manny said he could not pay me more. The employer, through its attorney, responded to my attorney saying that I was an independent contractor, and that I did not work over forty hours per week. Manny's attorney said that she had sent a letter, but my attorney never received it. The attorney's response by email, and my attorneys' response to that response, is attached (EXHIBIT B). No further substantive pre-suit communications took place.**

I, **ALDO DELGADO**, declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing answers to the Court's Interrogatories are true and correct based on my personal knowledge.

Executed this \_\_\_9th\_\_\_ day of October 2017 in _____Hendry_____ County, Florida.

*/s/ Aldo Delgado*
**ALDO DELGADO**